IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on May 3, 2018

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.: |
| | : | |
| v. | : | MAGISTRATE NO.: 18-MJ-00131 |
| | : | |
| RUBEN DARIO HERRERA IBANEZ, | : | VIOLATIONS: |
| | : | |
| Defendant. | : | 18 U.S.C. § 371 |
| | : | (Conspiracy to Defraud the United States |
| | : | and Violate the Arms Export Control Act, |
| | : | and the International Traffic in Arms |
| | : | Regulations) |
| | : | |
| | : | 22 U.S.C. § 2778 |
| | : | (Violation of the Arms Export Control |
| | : | Act) |
| | : | |
| | : | 22 C.F.R. §§ 120-130 |
| | : | (International Traffic in Arms |
| | : | Regulations) |

## INDICTMENT

The Grand Jury charges that:

### COUNT ONE

At all times material to this Indictment:

1. Defendant RUBEN DARIO HERRERA IBANEZ ("HERRERA") was a citizen of Bolivia.

2. The unindicted coconspirator (hereinafter, "coconspirator") was a national of Peru and a lawful permanent resident of the United States.

## The Arms Export Control Act

3. The Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, authorized the President of the United States to control the export of "defense articles" by designating items on the United States Munitions List ("Munitions List"), which is codified at 22 C.F.R. Part 121.

4. The AECA and its attendant regulations, the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Parts 120-130, required a person to apply for and obtain an export license from the United States Department of State, Directorate of Defense Trade Controls ("DDTC"), located in the District of Columbia, before exporting from the United States arms, ammunition, or articles of war, which were all categorized as defense articles under 22 U.S.C. §§ 2778(b)(2) and 2794(3), and 22 C.F.R. Parts 120.1 and 121.1. In the application for an export license, the exporter was required to state, among other things, the nature of the defense articles to be exported, the end recipient of the defense articles, and the purpose for which the defense articles were intended.

5. The defense articles which were subject to such licensing requirements were designated on the Munitions List. Those designations were made by the State Department with the concurrence of the Defense Department under 22 U.S.C. § 2778(a)(1) and 22 C.F.R. Part 120.2.

6. Category I of the Munitions List included firearms, as well as firearms components, parts, and accessories, including AK-47 pistols and AK-47 magazines.

7. The AECA and ITAR were in effect at all times relevant to this Indictment.

8. At no time did HERRERA or his coconspirator apply for, receive, or possess, or cause others to apply for, receive, or possess a license from the DDTC, located within the District of Columbia, to export firearms and firearms components, parts, and accessories from the United States to Bolivia. Nor at any time did HERRERA or his coconspirator register as defense article

exporters or brokers.

### The Conspiracy

From on or about October 19, 2018 through on or about October 26, 2018, within the District of Columbia and elsewhere, defendant RUBEN DARIO HERRERA IBANEZ and his coconspirator unlawfully, willfully and knowingly combined, conspired, confederated and agreed with one another to (1) defraud the United States, and (2) commit offenses against the United States, that is, to knowingly and willfully export defense articles listed on the USML from the United States to Bolivia, without having first obtained from the DDTC a license or other written approval for such export, in violation of Title 22, United States Code, Sections 2778(b)(2) and (c), and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1.

### Objects of the Conspiracy

9.  It was an object of the conspiracy to obtain firearms and firearms accessories in the United States that were on the USML and export them to Bolivia, without having first obtained the required license or written approval from the DDTC.

10. It was further an object of the conspiracy to conceal the prohibited transactions from detection by the United States government.

### The Manner and Means of the Conspiracy

11. The conspirators would and did use the following manner and means, among others, to accomplish the objects of the conspiracy:

    a. HERRERA and his coconspirator visited a gun shop in Hialeah, Florida, together, where the coconspirator completed the necessary paperwork and made a monetary down payment to purchase several firearms and firearms accessories that would be turned over to HERRERA;

b. HERRERA and his coconspirator made arrangements to smuggle those firearms and firearms accessories in a container to Bolivia, without having first obtained the required license or written approval from the DDTC; and

c. When informed that the gun shop would not complete the sale of the firearms and firearms accessories, HERRERA contacted an individual he believed would sell him the firearms and firearms accessories on the "black market," so that HERRERA could then export the firearms and firearms accessories to Bolivia without the required license from the federal government.

## Overt Acts

12. On or about October 19, 2018, HERRERA flew from Bolivia to the United States and then he and a coconspirator went to a gun store in Hialeah, Florida to purchase firearms for HERRERA.

13. On or about October 19, 2018, while at the gun store, the coconspirator placed a $1,000 down payment on the purchase of seven AK-47 Century Arms MICRO DRAGO pistols and 100 AK-47 magazines.

14. On or about October 19, 2018, HERRERA agreed to pay the coconspirator the purchase price of the pistols and magazines, as well as a fee of approximately $50 for each firearm that the coconspirator purchased for HERRERA.

15. On or about October 19, 2018, HERRERA purchased two stereo speakers in which to hide the firearms so that he could ship them to Bolivia, and he stored the speakers at the coconspirator's home in Florida.

16. On or about October 19, 2018, HERRERA called the gun store using the telephone app, Whatsapp, and a Bolivian phone number, and attempted to add three additional AK-47 pistols

to the original order that had been placed in the store.

17. On or about October 26, 2018, HERRERA and the coconspirator returned to the gun store to complete the purchase of the seven AK-47 pistols and 100 AK-47 magazines.

18. On or about October 26, 2018, when notified that the gun store declined to sell the AK-47 pistols and magazines to HERRERA and the coconspirator, HERRERA asked a store employee whether he could buy the same items on the "black market."

19. On or about October 26, 2018, HERRERA called a phone number of a person he believed to be a seller of illicit firearms on the "black market," who was in fact an undercover law enforcement agent, and negotiated the purchase of ten AK-47 pistols and 120 AK-47 magazines from the undercover law enforcement agent, for a total purchase price of $12,700.

20. On or about October 26, 2018, HERRERA met with the undercover law enforcement agent and inspected the AK-47 pistols and magazines that he intended to purchase.

21. On or about October 26, 2018, HERRERA handed the undercover law enforcement agent $5,000 as a down payment for the AK-47 pistols and magazines, and then HERRERA started loading the firearms into a vehicle.

### Absence of a License

22. HERRERA and the coconspirator failed to apply for, receive, or possess, or caused others to fail to apply for, receive, or possess a license from the DDTC, located in the District of Columbia, to export defense articles from the United States to Bolivia, nor are HERRERA or the coconspirator registered as defense article exporters or brokers.

(**Conspiracy to Defraud the United States and Violate the Arms Export Control Act and the International Traffic in Arms Regulations**, in violation of Title 18, United States Code, Section 371; Title 22, United States Code, Section 2778; Title 22, Code of Federal Regulations, Sections 120-130).

## COUNT TWO

23. Paragraphs 1 through 8 and 12 through 22 of this Indictment are re-alleged as if fully set forth herein.

24. On or about October 26, 2018, within the District of Columbia and elsewhere, defendant RUBEN DARIO HERRERA IBANEZ did willfully attempt to export from the United States to Bolivia certain firearms and firearms accessories, that is, 10 AK-47 pistols and 120 AK-47 magazines, all of which were and are designated as defense articles on the USML, the export of which was and is controlled under the Arms Export Control Act, without having first obtained from the DDTC the required license or other written approval for such export.

(**Unlawfully Exporting and Attempting to Export Arms and Munitions from the United States**, in violation of Title 22, United States Code, Section 2778(b) and (c); and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1).

A TRUE BILL:

FOREPERSON.

*[signature]* //OMC

Attorney of the United States in
and for the District of Columbia.

6